## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BADER AL-BABTAIN AND
ABDULMOHSEN AL-BABTAIN,

        Plaintiffs,

v.

HANI S. BANOUB,

        Defendant.

_____/

HANI S. BANOUB,

        Counter-Plaintiff,

v.

                             **CASE NO. 8:06-cv-1973-T-30TGW**

BADER AL-BABTAIN,
ABDULMOHSEN AL-BABTAIN,
M/S. BADER BARRAK AL BABTAIN &
BROS. GEN. TRAD. & CONT. CO., A/K/A
M/S. BADER AL BABTAIN GENERAL
TRADING CO., ENERGY ALLIED CO.
(KUWAIT), U.S. ENERGY ALLIED, LLC,
and ENERGY ALLIED CONSULTANTS,
LTD.,

        Counter-Defendants.

_____/

## ANSWER, AFFIRMATIVE DEFENSES AND
## COUNTERCLAIM OF DEFENDANT, HANI S. BANOUB

     Defendant/Counter-Plaintiff, HANI S. BANOUB ("**Banoub**"), by and through its

undersigned counsel, hereby files his Answer, Affirmative Defenses and Counterclaim.

1

## ANSWER

Responding to the particularly numbered allegations of the Complaint, BANOUB states as follows:

### PARTIES

1.      Without sufficient knowledge, therefore, denied.

2.      Without sufficient knowledge, therefore, denied.

3.      Admitted.

4.      Admitted for jurisdictional purposes only, otherwise, denied.

5.      Admitted for jurisdictional purposes only, otherwise, denied.

### FACTS

6.      Denied.

7.      Admitted that Banoub worked for U.S. Energy Allied Company, LLC ("**US Energy Allied**").  Denied as to the remaining allegations.

8.      Admitted that US Energy Allied's principal place of business was located in Florida and that Banoub acted as its Vice President at one time.  Denied as to the remaining allegations.

9.      Admitted that Plaintiffs/Counter-Defendants, on behalf of M/s. Bader Barrak Al Babtain & Bros. Gen. Trad. & Cont. Co. and/or M/s. Bader Al Babtain General Trading Co. (the "**Trading Co.**"), requested that Banoub purchase a boat in the United States of America on behalf of the Trading Co.  Denied as to the remaining allegations.

10.      Denied.

11.      Admitted that Banoub sent Plaintiffs/Counter-Defendants a survey inspection of a boat.  Denied as to the remaining allegations.

12.     Admitted that copies of wire instructions dated April 6, 2005 and May 1, 2005 are attached to the Complaint.  Denied as to the remaining allegations; the referenced documents speaks for themselves.

13.     Denied.

14.     Admitted that Banoub located a boat in Florida to purchase on behalf of the Trading Co.  Denied as to the remaining allegations.

15.     Admitted that Banoub began the purchase process of a boat for the Trading Co. Denied as to the remaining allegations.

16.     Denied.

17.     Without sufficient knowledge, therefore, denied.

18.     Without sufficient knowledge, therefore, denied.

19.     Admitted that an email dated October 6, 2005 from Hani Banoub to Abdulmohsen Al-Babtain is attached to the Complaint.  Denied as to the remaining allegations; the referenced document speaks for itself.

20.     Admitted that an email dated October 15, 2005 from Hani Banoub to bo_barrak@hotmail.com is attached to the Complaint.  Denied as to the remaining allegations; the referenced document speaks for itself.

21.     Denied.

22.     Denied.  The referenced document speaks for itself.

23.     Admitted that Banoub did not complete the purchase of a boat for the Trading Co. As to the remaining allegations, without sufficient knowledge, therefore, denied.

24.     Denied.

## COUNT I - BREACH OF ORAL CONTRACT

25.     Banoub realleges and incorporates his responses to paragraphs 1 through 24 above as if fully set forth herein.

26.     Admitted that Plaintiffs/Counter-Defendants, on behalf of the Trading Co., requested that Banoub purchase a boat in the United States of America on behalf of the Trading Co.  Denied as to the remaining allegations.

27.     Without sufficient knowledge, therefore, denied.

28.     Admitted that the Trading Co. transferred funds to Banoub in the total amount of $900,000.00.  Denied as to the remaining allegations.

29.     Admitted that Banoub did not complete the purchase of a boat for the Trading Co. Denied as to the remaining allegations.

30.     Denied.

31.     Denied.

In response to the WHEREFORE paragraph that appears at the end of Count I, Banoub denies that Plaintiffs/Counter-Defendants are entitled to the relief requested therein or any relief whatsoever and demands judgment in favor of Banoub.

## COUNT II - QUANTUM MERUIT

32.     Banoub realleges and incorporates his responses to paragraphs 1 through 24 above as if fully set forth herein.

33.     Denied.

34.     Denied.

35.     Denied.

In response to the WHEREFORE paragraph that appears at the end of Count II, Banoub denies that Plaintiffs/Counter-Defendants are entitled to the relief requested therein or any relief whatsoever and demands judgment in favor of Banoub.

## COUNT III - CONVERSION

36.     Banoub realleges and incorporates his responses to paragraphs 1 through 24 above as if fully set forth herein.

37.     Denied.

38.     Denied.

39.     Denied.

In response to the WHEREFORE paragraph that appears at the end of Count III, Banoub denies that Plaintiffs/Counter-Defendants are entitled to the relief requested therein or any relief whatsoever and demands judgment in favor of Banoub.

## COUNT IV - FRAUD

40.     Banoub realleges and incorporates his responses to paragraphs 1 through 24 above as if fully set forth herein.

41.     Denied.

42.     Denied.

43.     Denied.

In response to the WHEREFORE paragraph that appears at the end of Count IV, Banoub denies that Plaintiffs/Counter-Defendants are entitled to the relief requested therein or any relief whatsoever and demands judgment in favor of Banoub.

44.     Any allegations not expressly admitted, denied or otherwise controverted are hereby denied.

## AFFIRMATIVE DEFENSES

For his affirmative defenses to the Complaint, Banoub alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants failed to state a cause of action for breach of contract upon which relief can be granted.  Bader Al-Babtain and Abdulmohsen Al-Babtain (collectively, the "**Al-Babtains**") did not adequately allege facts to demonstrate that the parties mutually assented to a certain and definite proposition regarding the purchase of the boat and the parties left essential terms open.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants failed to state a cause of action for quantum meruit upon which relief can be granted.  The Al-Babtains allege the existence of an express agreement between the parties and cannot pursue an equitable remedy where an adequate remedy at law exists.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants failed to state a cause of action for conversion and fraud upon which relief can be granted.  A cause of action for conversion or fraud cannot be asserted where the parties, like the Al-Babtains and Banoub, are involved in a contractual dispute regarding the amount of funds owed.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants failed to state a cause of action for fraud upon which relief can be granted.  The damages claimed by the Al-Babtains are not separate from the damages claimed pursuant to a breach of contract.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants' claims are barred due to the failure of the Al-Babtains to join M/s. Bader Barrak Al Babtain & Bros. Gen. Trad. & Cont. Co., a/k/a M/s. Bader Al Babtain General Trading Co. (the "**Trading Co.**") to the action as an indispensable party.  The funds that were transferred to Banoub originated from the Trading Co.'s account.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs/Counter-Defendants are seeking equitable relief against Defendant, Banoub, the Al-Babtains are barred from seeking such relief by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants do not have a sufficient interest at stake in the controversy and, therefore, lack standing to bring this action.  The funds that were transferred to Banoub for the purchase of the boat originated from the Trading Co.'s account.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants' claims are barred, in whole or in part, by the implied covenant of good faith and fair dealing.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants' claims are barred, in whole or in part, by the doctrine of waiver.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs/Counter-Defendants' claims are subject to set-off from the funds owed by Plaintiffs/Counter-Defendants to Banoub for business development services that Defendant performed for the Al-Babtains.

## ELEVENTH AFFIRMATIVE DEFENSE

Banoub reserves his right to assert additional affirmative defenses as they become known through the course of discovery and litigation.

WHEREFORE, Defendant, Hani Banoub, respectfully requests that the Court deny the relief requested in Plaintiffs/Counter-Defendants' Complaint and award Banoub any other relief that this Court deems just and proper.

## COUNTERCLAIM

Defendant/Counter-Plaintiff, HANI S. BANOUB ("**Banoub**"), an individual, by and through undersigned counsel, hereby countersues Plaintiffs/Counter-Defendants, BADER AL-BABTAIN and ABDULMOHSEN AL-BABTAIN (collectively, the "**Al-Babtains**"), and Counter-Defendants, M/S. BADER BARRAK AL BABTAIN & BROS. GEN. TRAD. & CONT. CO., a/k/a M/S. BADER AL BABTAIN GENERAL TRADING CO. (the "**Trading Co.**"), ENERGY ALLIED CO. (KUWAIT) ("**Energy Allied Kuwait**"), U.S. ENERGY ALLIED, LLC ("**US Energy Allied**"), and ENERGY ALLIED CONSULTANTS, LTD ("**Energy Allied Consultants**"), and alleges:

## NATURE OF THE ACTION

1.      This is an action for damages in excess of $15,000.00, arising out of breaches of contract by the Al-Babtains, the Trading Co., Energy Allied Kuwait, US Energy Allied and Energy Allied Consultants, as more fully set forth below.

## PARTIES, JURISDICTION AND VENUE

2.      Defendant/Counter-Plaintiff, Banoub, is an individual who resides in the State of Florida.  At all times relevant to this action, Banoub provided business development services to the Counter-Defendants while residing in the State of Florida.

8

3.      Plaintiffs/Counter-Defendants, Al Babtains, are individuals believed to reside in Kuwait and who own and operate the Counter-Defendant entities.

4.      Counter-Defendants, Trading Co., Energy Allied Kuwait and Energy Allied Consultants are Kuwaiti entities owned and operated by the Al-Babtains.

5.      US Energy Allied is an inactive Florida limited liability company that is owned by the Al-Babtains.

6.      On or about October 23, 2006, Plaintiffs/Counter-Defendants, Al-Babtains, filed a Complaint against Banoub for allegedly defrauding Plaintiffs out of more than $900,000.00. Complaint at ¶ 6.

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

### Entities Owned and Operated by the Al-Babtains

9.      In approximately 1999 – 2000, Banoub began providing business development services for the Trading Co.  A true and correct copy of Banoub's business card with the Trading Co. and correspondence from Banoub dated July 25, 2003 reflecting Banoub's position with the Trading Co. is attached hereto as Exhibit A.

10.     Al-Babtains are officers of the Trading Co., which owns and/or controls Energy Allied Kuwait, US Energy Allied and Energy Allied Consultants.

11.     Banoub provided business development services to Energy Allied Consultants and was to be paid 10% of gross sales.  A true and correct copy of correspondence from Gerald

O'Toole to Abdulmohsen Al-Babtain dated November 10, 2000 is attached hereto as <u>Exhibit B</u>, setting forth the shareholdings of Energy Allied Consultants.

12.     Banoub also acted as the Vice-President of Energy Allied Consultants.  A true and correct copy of Banoub's business card for Energy Allied Consultants is attached hereto as <u>Exhibit C</u>.

13.     In 2002 – 2003, Banoub began acquiring travel business agreements on behalf of Energy Allied Consultants.  Specifically, Banoub acquired a profitable travel company, Destinations of the World ("**DOW**"), on behalf of Energy Allied Consultants in 2003.

14.     Although Banoub negotiated the purchase of DOW on behalf of Energy Allied Consultants, Plaintiffs ultimately finalized the purchase through the Trading Co.

15.     To date, DOW is valued at approximately $9,000,000.00.  Banoub is entitled to 10% ownership and gross sales of DOW because he acquired the travel entity through Energy Allied Consultants.

16.     At the very least, the Trading Co. owes Banoub consulting fees and a bonus for acquiring DOW.

17.     In October or November 2002, Banoub played an integral role in the formation of an agency agreement between Washington Group International ("**WGI**") and the Trading Co.  A true and correct copy of correspondence dated November 1, 2003 from Wade Miller at WGI to Hani Banoub at the Trading Co. detailing the agency agreement between WGI and the Trading Co. is attached hereto as <u>Exhibit D</u>.

18.     Rather than paying agency fees to the Trading Co. directly, WGI paid funds to Energy Allied Kuwait, another entity owned and operated by Plaintiffs.

19.     Pursuant to Banoub's agreement with the Trading Co. for payment of consulting fees and bonuses, the Trading Co. owes Banoub a portion of the funds paid to Energy Allied Kuwait.

20.     On or about January 2, 2004, Banoub executed an employment agreement with Energy Allied Kuwait, entitling him to 5% of the company's gross revenues and a salary of $72,000 annually that was to increase at 5% per year.   A true and correct copy of the Employment Agreement between Banoub and Energy Allied Kuwait is attached hereto as Exhibit E.

21.     Energy Allied Kuwait shares the same business address as the Trading Co.

22.     Additionally, in 2004, Banoub acquired a 6% ownership interest in Energy Allied Kuwait.   A true and correct copy of correspondence dated November 29, 2004 from Abdulmohsen Al-Babtain to Hani Banoub reflecting Banoub's 6% ownership interest Energy Allied Kuwait is attached hereto as Exhibit F.

23.     Plaintiffs sold Energy Allied Kuwait sometime after January 2, 2004.

24.     On or about August 3, 2006, WGI extended a subcontract agency agreement to the Trading Co.   A true and correct copy of the subcontract agreement between WGI and the Trading Co. is attached hereto as Exhibit G.

25.     In approximately October 2005, Plaintiff/Counter-Defendant, Abdulmohsen Al-Babtain, was paid funds by WGI through the use of Ahmadiah as a subcontractor, a business opportunity developed by Banoub, of which Banoub is entitled to 5% of gross revenues pursuant to his Employment Agreement.   A true and correct copy of correspondence reflecting the WGI business deal is attached hereto as Exhibit H.

26.     In 2004, Banoub established an office of US Energy Allied in Florida.  US Energy Allied was capitalized by the Trading Co.  True and correct copies of bank wire statements reflecting payments from the Trading Co. to US Energy Allied are attached hereto as <u>Exhibit I</u>.

27.     Banoub is owed funds from his Employment Agreement with Energy Allied Kuwait, which was subsequently sold by the Al-Babtains.  The funds owed to Banoub consist of his 6% ownership share of Energy Allied Kuwait as well as his salary and bonus payments for business he procured on behalf of the company.

28.     Additionally, Banoub is entitled to sale proceeds from the sale of Energy Allied Kuwait.

29.     The Trading Co. owes funds to Banoub for his assistance in the acquisition of DOW, as well as his assistance in the acquisition of an agency agreement with WGI.  Banoub is entitled to a percentage of the gross sales of DOW and/or a percentage of the agency fee received from WGI.

30.     Additionally, Banoub is owed 10% of gross sales from US Energy Allied and Energy Allied Consultants.

## <u>The Boat Purchase</u>

31.     In 2004, the Trading Co. hired Banoub to locate and purchase a boat in the United States of America.

32.     To facilitate the boat purchase, the Trading Co. wired funds from the Commercial Bank of Kuwait to Banoub[1] on April 6, 2005 in the amount of USD $80,000.00, and wired funds on May 1, 2005 in the amount of USD $820,000.00.  True and correct copies of the wire transfer orders are attached hereto as <u>Exhibit J</u>.

---

[1] Although the wire instructions seem to be from 2 separate trading companies, it is Banoub's understanding and belief that the entity that wired the funds is one in the same.

33.     In approximately June 2005, Banoub began exploring the purchase of a 60' Sunseeker Predator Express named "PowerPlay."  True and correct copies of information related to PowerPlay are attached hereto as <u>Exhibit K</u>.

34.     On or about June 21, 2005, Banoub forwarded a proposed purchase agreement to the owner of PowerPlay.  A true and correct copy of a facsimile dated June 21, 2005 from Hani Banoub to Dan Grieco is attached hereto as <u>Exhibit L</u>.

35.     The owner of PowerPlay signed the purchase agreement and forwarded it to Banoub.  A true and correct copy of a facsimile dated September 2, 2005 from Hani Banoub to Ms. Phi Le of Power Design is attached hereto as <u>Exhibit M</u>.

36.     Banoub hired Great American Marine and All Points Covered Marine Survey, Inc. to conduct surveys on PowerPlay.  A true and correct copy of the surveys are attached hereto as <u>Exhibit N</u>.

37.     On or about September 29, 2005, Banoub received a Freight Contract from Global Ocean Freight for the delivery of PowerPlay to Kuwait on or about November 18, 2005.  A true and correct copy of the Freight Contract is attached hereto as <u>Exhibit O</u>.

38.     On or about October 6, 2005, Banoub notified the Al-Babtains and the Trading Co. that Banoub confirmed the booking of PowerPlay on November 18, 2005.  A true and correct copy of the October 6, 2005 email correspondence from Banoub to Plaintiff/Counter-Defendant, Abdulmohsen Al-Babtain, is attached hereto as <u>Exhibit P</u>.

39.     On or about October 15, 2005, Banoub sent an email to the Al-Babtains and the Trading Co. explaining the delay in the purchase of PowerPlay.  A true and correct copy of the October 15, 2005 email correspondence from Banoub to Plaintiff/Counter-Defendant, Abdulmohsen Al-Babtain, is attached hereto as <u>Exhibit Q</u>.

40.     Subsequently, in early November 2005, the purchase of PowerPlay was further delayed by weather-related events.  A true and correct copy of a facsimile from Banoub to Phi at Power Design dated November 2, 2005 is attached hereto as <u>Exhibit R</u>, and explains that the closing on PowerPlay was delayed and needed to be rescheduled.

<u>**The Al-Babtains' Misuse of Corporate Forms to Detriment of Banoub**</u>

41.     The Al-Babtains own and control the Trading Co., Energy Allied Kuwait, US Energy Allied and Energy Allied Consultants.

42.     The Al-Babtains have used these corporate entities for the improper purpose of depriving Banoub of funds that are owed to him for his business development services.

43.     Specifically, the Al-Babtains allowed Banoub to pursue certain business ventures, including the acquisition of DOW and the procurement of the WGI contract, through Energy Allied Consultants and Energy Allied Kuwait, with the intent to finalize the business arrangements through the Trading Co.

44.     At the time that payment was due to Banoub for his services, the Al-Babtains directed that payment be made to entities that Banoub did not possess a large ownership or shareholding interest in.

45.     Banoub acquired DOW on behalf of Energy Allied Consultants, however, the DOW purchase was finalized through the Trading Co.

46.     DOW is currently owned and operated by the Trading Co. and is valued at approximately $9,000,000.00.  Pursuant to his agreement with Energy Allied Consultants, Banoub is entitled to 10% ownership and gross sales of DOW.  A true and correct copy of business information regarding DOW, reflecting that the Al-Babtains are officers of the company, is attached hereto as <u>Exhibit S</u>.

14

47.    In 2002, Banoub assisted in the execution of an agency agreement between WGI and the Trading Co.  However, WGI paid the agency fees to Energy Allied Kuwait, rather than the Trading Co.

48.    At the time that the agency agreement with WGI was finalized, Banoub did not have an ownership share or an Employment Agreement with Energy Allied Kuwait.

49.    In 2004, Banoub became part owner of Energy Allied Kuwait.

50.    Sometime after January 2, 2004, the Al-Babtains sold Energy Allied Kuwait.  The Al-Babtains have never paid any sale proceeds to Banoub.

51.    The Al-Babtains have used their corporate entities in such a manner as to evade payment obligations to Banoub.

52.    The Al-Babtains have also misused company funds by financing personal purchases.

53.    The funds that were forwarded to Banoub to purchase the boat on behalf of the Trading Co. were transferred from the Trading Co.'s business account and not from the personal accounts of the Al-Babtains.

54.    The Al-Babtains filed the instant action against Banoub and contend that the boat was to be purchased on their personal behalf.  *See generally* Complaint.

55.    The Al-Babtains used the Trading Co.'s funds to finance a personal purchase. Such purchase constitutes a misuse of corporate funds.

56.    The Al-Babtains have improperly used the corporate forms of the Counter-Defendants and have misused corporate funds to the detriment of Banoub.

**The Declining Business Relationship Between Banoub and the Al-Babtains**

57.     After November 2005, the business and personal relationship between Banoub and the Al-Babtains declined.

58.     On numerous occasions, Banoub has requested payment of funds that are owed to him for business development services that he provided to the Al-Babtains and their corporate entities.

59.     The Al-Babtains have refused to pay Banoub the amounts that are due and owing to him pursuant to the business development services he provided to the Counter-Defendant entities.

60.     The Al-Babtains filed this action in the United States of America in their personal capacities in an attempt to avoid the involvement of the entities in this dispute and to avoid having to pay Banoub for his services.

61.     Subsequent to the filing of this action, the Al-Babtains expressed their willingness to offset funds owed to Banoub for work that he completed, with funds that were transferred to Banoub from the Trading Co. for the purchase of the boat.

62.     Through the Al-Babtains' misuse of the corporate forms of the Counter-Defendants, the Counter-Defendants are proper and necessary parties to this litigation.

63.     Additionally, all of Banoub's causes of actions against the Counter-Defendants arise out of the same transaction or occurrence of the underlying cause of action asserted by the Al-Babtains.

64.     Banoub was hired by the Counter-Defendants to provide business development services.  As such, all of the events regarding the purchase of the boat with the Trading Co.'s

funds are related to Banoub's business relationship with the Al-Babtains and the other Counter-Defendants.

65.     All conditions precedent to this action have been met or have been waived.

## COUNT I
### (Alter Ego/Breach of Contract - Al Babtains)

66.     Banoub realleges and incorporates by reference paragraphs 1 through 65 of the Counterclaim above, as if fully set forth herein.

67.     The Trading Co., Energy Allied Kuwait, US Energy Allied and Energy Allied Consultants are owned and controlled by the Al-Babtains.

68.     The Al-Babtains dominated and controlled the Counter-Defendants to such an extent that the independent existence of the Counter-Defendant entities was non-existent.

69.     The Al-Babtains are alter-egos of the Counter-Defendant entities.

70.     The Al-Babtains, through their various entities, entered into valid and binding agreements with Banoub whereby Banoub agreed to provide business development services to the various entities.

71.     The Al-Babtains breached the agreements by failing to make payment to Banoub for business development services that he rendered.

72.     The Al-Babtains improperly used the corporate forms of Counter-Defendants to fraudulently evade payment liability to Banoub for his business development services.

73.     Additionally, the Al-Babtains misused funds of the Trading Co. to finance a personal purchase.

74.     As a result of these improper uses of the Counter-Defendant entities and the Al-Babtains' breach of the various agreements with Banoub, the Al-Babtains should be held

personally liable for the payment of funds owed to Banoub for his business development services.

WHEREFORE, Defendant/Counter-Plaintiff, Hani Banoub, demands judgment against Plaintiffs/Counter-Defendants, Al-Babtains, for damages, interest and such other and further relief as this Court deems just and proper.

## COUNT II
### (Breach of Contract - Trading Co., U.S. Energy Allied and Energy Allied Consultants)

75.     Banoub realleges and incorporates by reference paragraphs 1 through 65 of the Counterclaim above, as if fully set forth herein.

76.     Banoub entered into valid and binding agreements with the Trading Co., US Energy Allied and Energy Allied Consultants whereby the entities agreed to pay consulting fees, bonuses and ownership fees to Banoub for business development services.

77.     Specifically, in November 2000, Banoub entered into an agreement with Energy Allied Consultants whereby Banoub provided business development services in exchange for payment of 10% of gross sales of Energy Allied Consultants.

78.     Banoub provided business development services to the Trading Co., US Energy Allied and Energy Allied Consultants including, but not limited to, the procurement of an agency agreement with WGI and the acquisition of a profitable travel company, DOW.

79.     The Trading Co., US Energy Allied and Energy Allied Consultants breached the agreements with Banoub by failing to make payments due and owing for the business development services he provided to the entities.

80.     Banoub has been damaged by the breaches of the Trading Co., US Energy Allied and Energy Allied Consultants in the form of lost consulting fees, bonuses and ownership interest payments.

WHEREFORE, Defendant/Counter-Plaintiff, Hani Banoub, demands judgment against Counter-Defendants, Trading Co., US Energy Allied and Energy Allied Consultants for damages, interest and such other and further relief as this Court deems just and proper.

### COUNT III
### (Breach of Contract - Energy Allied Kuwait)

81.     Banoub realleges and incorporates by reference paragraphs 1 through 65 of the Counterclaim above, as if fully set forth herein.

82.     On or about January 2, 2004, Banoub entered into a valid and binding written Employment Agreement with Energy Allied Kuwait whereby Banoub agreed to provide business development services in exchange for payment of 5% of gross revenues, an annual salary in the amount of $72,000.00 and a 6% ownership share of the business.

83.     Banoub provided business development services to Energy Allied Kuwait, including, but not limited to, the procurement of an agency agreement with WGI.

84.     Energy Allied Kuwait breached the Employment Agreement with Banoub by failing to make payments due and owing for the business development services he provided to Energy Allied Kuwait.

85.     Energy Allied Kuwait was sold sometime after January 2, 2004.  Banoub did not receive any sale proceeds from that particular sale.

86.     Banoub has been damaged by the breach of Energy Allied Kuwait in the form of lost consulting fees, lost bonuses, lost salary, lost share in gross revenues and lost payments due and owing for his ownership interests in the company.

WHEREFORE, Defendant/Counter-Plaintiff, Hani Banoub, demands judgment against Counter-Defendant, Energy Allied Kuwait, for damages, interest and such other and further relief as this Court deems just and proper.

## COUNT IV
### (Unjust Enrichment - All Counter-Defendants)

87.      Banoub realleges and incorporates by reference paragraphs 1 through 65 of the Counterclaim above, as if fully set forth herein.

88.      Banoub provided various business development services to the Counter-Defendants.

89.      Counter-Defendants accepted the benefit of these business development services with knowledge that Banoub was providing such services.

90.      It is inequitable for Counter-Defendants to retain the benefits of the business development services without paying Banoub a fee and/or percentage of sales that were achieved through his services.

WHEREFORE, Defendant/Counter-Plaintiff, Hani Banoub, demands judgment against Counter-Defendants for damages, interest and such other and further relief as this Court deems just and proper.

DATED:  June 13, 2007

                                                                          \s\ Amanda K. Bennett, Esq.
                                                                      Mark A. Basurto, Esq.
                                                                      Fla. Bar No.:  0531731
                                                                      Amanda K. Bennett, Esq.
                                                                      Fla. Bar No.:  0569054
                                                                      BUSH ROSS, P.A.
                                                                      220 S. Franklin Street
                                                                      P.O. Box 3913
                                                                      Tampa, FL  33601-3913
                                                                      (813) 224-9255
                                                                      (813) 223-9620 (Facsimile)
                                                                      *Attorneys for Hani S. Banoub*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2007, I electronically filed the foregoing Answer, Affirmative Defenses and Counterclaim of Defendant, Hani S. Banoub, with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties on the Court's service list.

    \s\ Amanda K. Bennett, Esq.
Amanda K. Bennett, Esq.
Florida Bar No.: 0569054
Attorney for Hani Banoub
BUSH ROSS, P.A.
P.O. Box 3913
Tampa, FL 33601
(813) 224-9255
(813) 223-9620 (facsimile)
abennett@bushross.com