UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BADER AL-BABTAIN and**
**ABDULMOHSEN AL-BABTAIN,**

    Plaintiffs,

v.   Case No. 8:06-cv-1973-T-30TGW

**HANI S. BANOUB,**

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs/Counter Defendants' Motion to Dismiss Counts I and IV of Defendant/Counter Plaintiff's Counterclaim and Supporting Memorandum of Law (Dkt. #24), and Defendant/Counter Plaintiff's Memorandum of Law In Opposition to Plaintiffs/Counter Defendants' Motion to Dismiss Counterclaim (Dkt. #30). The Court, having considered the motion, response, memoranda, complaint, counterclaim, exhibits, and being otherwise advised in the premises, finds that Plaintiffs/Counter Defendants' motion should be granted.

**Background.**

Plaintiffs/Counter Defendants, Bader Al-Babtain and Abdulmohsen Al-Babtain (together, the "Al-Babtains), bring a four (4) count Complaint (Dkt. #1) arising out of the purchase of a recreational yacht, on the following grounds: Count I - Breach of Oral Contract; Count II - Quantum Meruit; Count III - Conversion; and Count IV - Fraud. On

June 13, 2007, Defendant/Counter Plaintiff, Hani Banoub ("Banoub"), filed an Answer, Affirmative Defenses and Counterclaim (Dkt. #19).  In the Counterclaim, Banoub brings a four (4) count counterclaim against the Al-Babtains as well as corporate co-counter defendants, Bader Barrack Al Babtain & Bros. Gen. Trad. & Cont. Co. (the "Trading Co."), Energy Allied Co. located in Kuwait ("Energy Allied Kuwait"), U.S. Energy Allied located in Florida ("U.S. Energy Allied"), and Energy Allied Consultants, Ltd ("Energy Allied Consultants") (collectively referred to as the "Energy Allied Entities").  Only Counts I and IV of the Counterclaim concern claims against the Al-Babtains.  Count I seeks to pierce the corporate veil of the Energy Allied Entities in order to hold the Al-Babtains personally liable for the breach of certain written and/or oral employment contracts for various business development services  by and between Banoub individually as well as the Energy Allied Entities.  Count IV alleges a claim for unjust enrichment against the Al-Babtains and the Energy Allied Entities based on the same business development services allegedly rendered by Banoub.

**Motion to Dismiss Standard Under 12(b)(6).**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in

the light most favorable to the plaintiff.  See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994).  The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.  See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985).  "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief may be granted.  Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994).  Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims.  Blumel v. Mylander, 919 F.Supp. 423, 425 (M.D. Fla. 1996).  Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate.  Marshall County Bd. Of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

**Analysis.**

The Al-Babtains argue that the allegations pled in Defendant's Counterclaim fail to: allege facts justifying the piercing of the corporate veils of the Energy Allied Entities; identify the specific terms of any of the alleged oral contracts; allege a valid employment agreement by and between Banoub and the Al-Babtains, individually.  The Al-Babtains' arguments are well taken.

**I.     Banoub's Allegations.**

In the Counterclaim, Banoub alleges, in pertinent part, that: in 1999 he began providing "business development services" for the Trading Co.; the Al-Babtains are officers

of the Trading Co.; the Trading Co. owns and controls the Energy Allied Entities; the Al-Babtains "owned and controlled" the Energy Allied Entities; the Al-Babtains "dominated and controlled" the Energy Allied Entities to such an extent that they are not independent entities; "the Al-Babtains are alter-egos" of the Energy Allied Entities; "the Al-Babtains, through their various entities, entered into valid and binding agreements with Banoub"[1]; the agreements were breached "by failing to make payment to Banoub for business development services"; "the Al-Babtains improperly used the corporate forms" of the Energy Allied Entities "to fraudulently evade payment liability to Banoub"; "the Al-Babtains misused funds of the Trading Co. to finance a personal purchase"; "as a result of these improper uses" of the Energy Allied Entities and "the Al-Babtains' breach of the various agreements with Banoub, the Al-Babtains should be held personally liable for the payment of funds owed to Banoub for his business development services." Additionally, Banoub alleges that he entered into a written employment agreement with Energy Allied Kuwait in January 2004. The employment agreement entitled him to 5% of the company's gross profits. Subsequently, Banoub also acquired 6% ownership interest in Energy Allied Kuwait. Energy Allied Kuwait was ultimately sold, but Banoub claims that he did not receive any sale proceeds.

---

[1] Banoub claims that he was entitled to be paid 10% of Energy Allied Consultants' gross sales. Banoub also claims that he is entitled to 10% ownership and gross sales of Destinations of the World ("DOW") because in 2002-2003 "he acquired the travel entity through Energy Allied Consultants" or "at the very least, the Trading Co. owes Banoub consulting fees and a bonus for acquiring DOW." Banoub also claims that he is entitled to "a portion of the funds paid to Energy Allied Kuwait" for his services during November 2002 in forming an agency agreement between Washington Group International ("WGI") and the Trading Co. See Counterclaim, Dkt. #19.

**II.     Piercing the Corporate Veil.**

In <u>Tiernan v. Sheldon</u>, 191 So.2d 87, 89 (Fla. 4th DCA 1966), *cert. discharged*, 200 So.2d 183 (Fla. 1967), summarized the circumstances under which a court should pierce the corporate veil:

> Florida decisions uniformly hold that courts will look through the screen of a corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetuate a fraud upon them, or to evade existing personal liability.[2]

The leading case on veil piercing under Florida law is <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So.2d 1114 (Fla. 1984). The <u>Dania</u> court acknowledged that "[t]he corporate veil will not be pierced either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." <u>Dania</u>, 450 So.2d 1114, 1120, citing <u>Advertects, Inc. v. Sawyer Industries, Inc.</u>, 84 So.2d 21, 24 (Fla. 1955). In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, a creditor cannot question the corporate existence, but must confine his efforts to the remedies provided by law

---

[2] Subsequent Florida courts have eliminated the ambiguous provision "or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock". <u>See</u> <u>Steinhardt v. Banks</u>, 511 So.2d 336, 339 (Fla. 4th DCA 1987).

for satisfying his judgment from the assets of the corporation.  See Dania, 450 So.2d 1114, 1120.

In this case, Banoub has not alleged that the Al-Babtains organized the Energy Allied Entities in order to avoid personally liability.[3]   Rather, Banoub alleges that the Al-Babtains "improperly used the corporate forms of Counter-Defendants to fraudulently evade payment liability to Banoub for his business development services."[4]  Banoub admits that the various employments agreements were made with and for the benefit of the Energy Allied Entities. Banoub has not alleged that the Energy Allied Entities were organized or employed to "accomplish some fraud or illegal purpose," "evade some statute," or "accomplish some fraud or illegal purpose."  Banoub's claim that the corporations were used to "fraudulently evade payment" to him for his business services is insufficient to state a cause of action for piercing the corporate veil.  At best, Banoub has stated a cause of action for a breach of an employment agreement against a corporate entity.  Fraud, justifying the piercing of the corporate veil, does not arise every time a employer fails to pay an employee a bonus. Likewise, Banoub's claim that "the Al-Babtains misused funds of the Trading Co. to finance a personal purchase" in no way justifies the piercing of the corporate veil of the Trading Co. At best, it would support a shareholder derivative suit seeking a return to the corporation of

---

[3] From a reading of the Counterclaim, it appears that all but one (U.S. Energy Allied was incorporated by Banoub in Florida) of the Energy Allied Entities were in existence prior to Banoub's employment services. Also, Banoub claims that he was the vice president of Energy Allied Consultants and a 6% shareholder of Energy Allied Kuwait.  The Al-Babtains each held a 21.150%  share of stock in Energy Allied Kuwait.

[4] See Dkt. #19, Paragraph 72.

the funds wrongfully expended.  Such a suit, however, would not be an appropriate counterclaim in this action.  For these reasons, Counter Defendants' motion to dismiss Count I of the Counterclaim for failure to state a claim is granted without prejudice.

### III.   Unjust Enrichment.

To state a claim for unjust enrichment under Florida law, a plaintiff must allege facts that, if taken as true, would show: (1) a benefit was conferred upon the defendant; (2) the defendant either requested the benefit or knowingly and voluntarily accepted it; (3) a benefit flowed to the defendant; and (4) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof.  <u>W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.</u>, 728 So.2d 297, 303 (Fla. 1st DCA 1999).

As discussed above, Banoub has alleged that he provided business development service for the Energy Allied Entities and entered into employment agreements with some of the Energy Allied Entities.  Banoub also alleges that the Trading Co., Energy Allied Consultants, and Energy Allied Kuwait benefitted from his business development services.  The Plaintiff has not alleged, however, that he provided business development services directly to the Al-Babtains or that his services directly benefitted the Al-Babtains.  It appears from a reading of the pleadings that the only service which Banoub performed for the Al-Babtains personally was the service of purchasing a yacht, which ultimately did not occur.  For these reasons, Counter Defendants' motion to dismiss Count IV of the Counterclaim is granted without prejudice as to the Al-Babtains only.

It is therefore ORDERED AND ADJUDGED that:

1.  Plaintiffs/Counter Defendants' Motion to Dismiss Counts I and IV of Defendant/Counter Plaintiff's Counterclaim and Supporting Memorandum of Law (Dkt. #24) is GRANTED without prejudice as to Counter Defendants Bader Al-Babtain and Abdulmohsen Al-Babtain only.

2.  Defendant/Counter Plaintiff shall have twenty (20) days from the entry of this Order to file an amended counterclaim if he wishes.

**DONE** and **ORDERED** in Tampa, Florida on September 24, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1973.mtd 24.wpd