# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**BADER AL-BABTAIN and**
**ABDULMOHSEN AL-BABTAIN,**

  **Plaintiffs,**

v.                                                      Case No.  8:06-cv-1973-T-30TGW

**HANI S. BANOUB,**

  **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Hani Banoub's Motion for

Reconsideration of this Court's June 30, 2008 Endorsed Order denying Banoub's Motion for

Leave to Amend Answer, Affirmative Defenses and Counterclaim (Dkt. #94), Plaintiffs'

Memorandum in Opposition to Banoub's Motion for Reconsideration (Dkt. #96),  Counter

Defendants' Motion to Dismiss Counterclaim for Lack of Personal Jurisdiction and Failure

to State a Claim, and Supporting Memorandum of Law (Dkt. #79),  Declaration of

Abdulmohsen Al-Babtain (Dkt. #80), Declaration of Bader Al-Babtain (Dkt. #88), and

Banoub's Response in Opposition to Counter Defendants' Motion to Dismiss Counterclaim

for Lack of Personal Jurisdiction (Dkt. #93).

Upon a review of Defendant's Motion for Reconsideration of this Court's June 30,

2008 Endorsed Order denying Banoub's Motion for Leave to Amend Answer, Affirmative

Defenses and Counterclaim, the Court concludes that Defendant should be granted leave to

amend his answer, affirmative defenses, and counterclaim against Plaintiffs Bader Al-Babtain and Abdulmohsen Al-Babtain and Counter Defendants M/S Bader Barrak Al Babtain & Bros. Gen. Trad. & Cont. Co. a/k/a M/S Bader Al Babtain General Trading Co. ("Trading Co."), Energy Allied Consultants, Ltd. ("Energy Allied Consultants"), and Energy Allied Co. ("Energy Allied") as presented in Banoub's proposed amended Counterclaim.[1]

Next, the Court will address the Motion to Dismiss Counterclaim for Lack of Personal Jurisdiction and For Failure to State a Claim filed by Counter Defendants the Trading Company, Energy Allied and Energy Allied Consultants.

## Motion to Dismiss Standard Under 12(b)(2).

Determining whether the Court can exercise personal jurisdiction over a nonresident defendant requires a two-part analysis.  *Sehringer v. Big Lots, Inc.*, 532 F.Supp.2d 1335, 1337 (M.D. Fla. 2007); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  First, a Court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction.  *Madara*, 916 F.2d at 1514.  Second, a court must determine whether sufficient "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Meier v. Sun Int'l Hotels Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002).  Only if both requirements are satisfied may a court exercise personal jurisdiction over a nonresident.  *Madara*, 916 F.2d at 1514.

---

[1] Dkt. #82-2.

In order to survive a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing is held, the plaintiff must establish a *prima facie* case of jurisdiction over the nonresident defendant. *Madara* at 1514, citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). To establish a *prima facie* case of personal jurisdiction, the plaintiff must present evidence sufficient to defeat a motion for a directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.* "In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based on facts which are essentially undisputed." *Venetian Salami v. Parenthenais*, 554 So.2d 499, 502-03 (Fla. 1989).

**Background.**

Plaintiffs/Counter Defendants, Bader Al-Babtain and Abdulmohsen Al-Babtain (together, the "Al-Babtains"), bring a four (4) count Complaint (Dkt. #1) against Defendant/Counter Plaintiff Hani Banoub ("Banoub") arising out of the purchase of a recreational yacht, on the following grounds: Count I - Breach of Oral Contract; Count II - Quantum Meruit; Count III - Conversion; and Count IV - Fraud. On June 13, 2007, Banoub filed an Answer, Affirmative Defenses and Counterclaim (Dkt. #19). In the Counterclaim, Banoub brings a four (4) count counterclaim against the Al-Babtains as well as corporate co-counter defendants, Bader Barrack Al Babtain & Bros. Gen. Trad. & Cont. Co. (the "Trading Co."), Energy Allied Co. located in Kuwait ("Energy Allied"),  U.S. Energy Allied located

in Florida ("U.S. Energy Allied"), and Energy Allied Consultants, Ltd ("Energy Allied Consultants").[2]

In support of Defendants' Motion to Dismiss the Trading Co. and Energy Allied from these proceedings, the Al-Babtains have each offered individual affidavits and exhibits. In opposition, Banoub also offers affidavits and exhibits.

Undisputed facts.

Energy Allied is a company organized under the laws of Kuwait with its principal place of business in Kuwait. It is undisputed that Banoub has been an employee of Energy Allied since January of 2004. Pursuant to a written Employment Agreement, Energy Allied employed Hani Banoub as a Vice President "subject to general supervision, advice and direction of Energy Allied Co. Board of Directors." Hani Banoub agreed to provide "Business Development, New Ventures, General Management Support and Client Services" and to "report all business activities and potential new ventures or projects directly to the board." Hani Banoub has lived in Florida at all times relevant to these proceedings. Further, the Employment Agreement indicates that Banoub resided in Lutz, Florida, and that Banoub would be paid an annual salary of US$72,000.

---

[2] Pursuant to Banoub's Motion for Leave to Amend Answer, Affirmative Defenses and Counterclaim and proposed Amended Counterclaim (Dkt. #82), Defendants U.S. Energy Allied and Energy Allied Consultants, Ltd. will be dropped as parties to this litigation. Thus, the Court will deny as moot Energy Allied Consultants Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and dismiss both parties from this action without prejudice.

Banoub traveled back and forth from Florida to Kuwait frequently as part of his employment duties.  Banoub provided Energy Allied with "business development services" by sending emails, making phone calls, and traveling to different locations around the world.[3]

On June 1, 2004, Energy Allied established U.S. Energy Allied, LLC, a Florida limited liability company.   U.S. Energy Allied was voluntarily dissolved in 2006.

The Trading Company is organized under the laws of Kuwait with its principal place of business in Kuwait.  The Trading Company owns 70% of Energy Allied.  Banoub has been acting as Vice President for the Trading Company since 2002.  On November 7, 2002, Banoub, acting in his capacity as Vice President of the Trading Company, executed an Agreement by and between the Trading Company and Washington International, Inc., a Nevada corporation, doing business in Boise, Idaho ("WGI").  Pursuant to the Agreement, the Trading Company agreed to act as a local agent in Kuwait for WGI in relation to sales, marketing, subcontractors, supplies, staffing and similar contracting concerns.  The Agreement indicates that the parties agreed that Nevada law would govern any contractual disputes.

In April of 2005, Abdulmohsen Al-Babtain instructed the Commercial Bank of Kuwait to wire $80,000.00 from the Trading Company's account directly to Hani Banoub at SunTrust Bank located in Lutz, Florida.  On May 1, 2005, Abdulmohsen Al-Babtain

---

[3] Dkt. #80, Paragraph 22, Declaration of Abdulmohsen Al-Babtain.

instructed the Commercial Bank of Kuwait to wire $820,000.00 from the Trading Company's account directly to Hani Banoub at SunTrust Bank located in Lutz, Florida.[4]

Disputed declarations.

The Al-Babtains claim that Banoub was requested to buy a yacht on their behalf. Banoub claims that Al-Babtains requested that he buy the yacht on behalf of the Trading Company. Banoub also claims that during his efforts to secure a yacht, he had multiple communications with the Al-Babtains regarding monies owed to him pursuant to his employment services, and that Bader Al-Babtain advised him to "retain the funds for the yacht as partial compensation for developing profitable business relationships for the Al-Babtains and Al-Babtain companies, including, but not limited to, the Trading Company, Energy Allied and DOTW."[5]  Such claim directly contradicts the allegations made in Paragraph 12 of Plaintiff's Complaint stating, "Plaintiffs sent to Defendant the US$900,000.00 by way of electronic funds transfer for the sole purpose of purchasing the yacht."[6]

The Al-Babtains claim that neither Energy Allied or the Trading Company have ever "operated, conducted, engaged in, or carried on a business or business venture in Florida"

---

[4] Dkt. #86, Exhibit 6, Affidavit of Hani Banoub.

[5] Dkt. #86, Paragraph 14, Affidavit of Hani Banoub.

[6] Dkt. #1.

or "had an office or agency in Florida."[7]   This statement is contradicted, however, by

Abdulmohsen Al-Babtain's acknowledgment that Energy Allied established U.S. Energy

Allied, LLC, a Florida limited liability company.   Such claims are further disputed by

Banoub's affidavit stating, in pertinent part:

> 3.      I engaged in systematic and continuous business development services for the Al-Babtain companies, including, but not limited to, Bader Barrack Al-Babtain & Bros. General Trading and Contracting (the "Trading Company"), Energy Allied Company (Kuwait) ("Energy Allied Kuwait") and Energy Allied Consultants from 2000 through 2005 in the state of Florida.
>
> 4.      I was Vice-President for the Trading Company, Energy Allied Kuwait and Energy Allied Consultants (collectively, the "Entities") and operated, conducted, engaged in and carried on business for the Entities in Florida.   The Entities requested I establish business relationships with U.S. based companies.   I furthered the Entities objectives through various methods, including executing agency agreements. . .
>
>                                                * * *
>
> 8.      I executed an agency agreement on behalf of the Trading Company with Washington Group, Inc. ("WGI") in 2002.   WGI performed work pursuant to the Agency Agreement and paid Energy Allied Kuwait instead of the Trading Company.   William Guant (of WGI) and I met in Florida several times to discuss potential projects in the Middle East after the execution of the WGI Agency Agreement.   The Entities were aware of my meetings with WGI representatives in Florida and reimbursed my expenses.   I communicated with WGI from Florida, frequently.   I also traveled to Boise, Idaho multiple times.
>
> 9.      Mike Nassar, the former Vice-President of Fluor Daniel and subsequent shareholder in Energy Allied Consultants, and I met in Tampa, Florida approximately 10 to 12 times from 2000 to 2005.   These meetings resulted in the formation of Energy Allied Consultants and a Memorandum of Understanding between Marathon, U.S. Energy Allied, LLC and Energy Allied International.
>
> 10.    Hossam Endraous, former Vice-President of Gulliver's and former employee of Destinations of the World ("DOTW"), met me in Tampa,

---

[7] Dkt. #80, Paragraph 11, Declaration of Abdulmohsen Al-Babtain.

Florida three or four times to discuss potential agency agreements with Gulliver's, a travel company. On two occasions, Mr. Endraous stayed at my house in Florida. These meetings led to a business opportunity with DOTW. I introduced the Al-Babtains and Al-Babtain companies to DOTW. Subsequently, either the Al-Babtains or an Al-Babtain company purchased DOTW.

\* \* \*

14.  In 2001, I met Akkerman, Inc. in Tampa, Florida. This relationship resulted in an executed agency agreement between Akkerman and the Trading Company.

\* \* \*

16.  I had multiple meetings in Tampa, Florida with Rod Ragan, President of Energy Allied International, and Alex Nassar, legal counsel for Energy Allied International, from 2000-2005. These two individuals were vital in securing the agency agreement with WGI. . .

17.  I executed agency agreements on behalf of the Trading Company with United Oil and Gas Consulting, Ltd., Rust-Oleum, Conbraco Industries, Inc. in Orlando and Miami. At times, I would travel to other states for business development purposes, including, obtaining executed agency agreements. However, most of my agency for the Entities occurred in Florida.[8]

Additionally, the Al-Babtains claim that all salary and bonus payments to Banoub where paid in Kuwati Dinars and deposited in a Kuwati bank account in Banoub's name.[9]

While, Banoub claims that he received payments in both Kuwait and Florida.[10]

---

[8] Dkt. #93-2, Affidavit of Hani Banoub in Support of Response to Motion to Dismiss.

[9] Dkt. #80, Paragraph 24, Declaration of Abdulmohsen Al-Babtain.

[10] Dkt. #93-2, Paragraph 19, Affidavit of Hani Banoub in Support of Response to Motion to Dismiss.

## Discussion.

### I.        Florida's Long Arm Statute.

In applying the Florida long-arm statute, a district court is required to construe the

statute as would the Supreme Court of Florida, since the reach of the statute is a question of

state law.  *Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d

889, 890-91 (11th Cir. 1983).

Florida Statute § 48.193 provides, in pertinent part:

   (1) Any person, whether or not a citizen or resident of this state, who
personally or through an agent does any of the acts enumerated in this
subsection thereby submits himself or herself and, if he or she is a natural
person, his or her personal representative to the jurisdiction of the courts of
this state for any cause of action arising from the doing of any of the following
acts:
        (a) Operating, conducting, engaging in, or carrying on a business or
business venture in this state or having an office or agency in this state;
                                        * * *
   (2)  A defendant who is engaged in substantial and not isolated activity
within this state, whether such activity is wholly interstate, intrastate, or
otherwise, is subject to the jurisdiction of the courts of this state, whether or
not the claim arises from that activity.

"In order to establish that a defendant is 'carrying on business' for the purpose of the

long-arm statute, the activities of the defendant must be considered collectively and show a

general course of business activity in the state for pecuniary benefit."  *Future Tech. Today,*

*Inc. v. OSF Healthcare Sys.*, 106 F.Supp.2d 1278, 1281 (S.D. Fla. 1999).  As a general

proposition, "a foreign parent corporation is not subject to the jurisdiction of a forum state

merely because a subsidiary is doing business there."  *Meier, v. Sun Int'l Hotels, Ltd.*, 288

F.3d 1264, 1272 (11th Cir. 2002); *see also Waxoyl, A.G. v. Taylor, Brion, Buker & Greene*,

711 So.2d 1251 (Fla. 3d DCA 1998).  Courts will make an exception, however, where "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity."  *Meier*, 288 F.3d at 1272; *see also Gadea v. Star Cruises Ltd.*, 949 So.2d 1143, 1147-48 (Fla. 3d DCA 2007) ("The amount of control exercised by parent must be high and very significant. . .it is where a subsidiary manifests no separate interests of its own, but in effect functions only as an agent to achieve the purpose of the parent corporation.") The exception will apply, and jurisdiction will extend, "where the affiliated domestic corporation 'manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.'" *Meier*, 288 F.3d at 1273, quoting *State v. Am. Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA1998); *see also Oriental Imports & Exports*, 701 F.2d at 892 ("The inquiry whether a nonresident is conducting business in Florida concerns the nature, not the extent, of the nonresident's activities in Florida."); *Pappalardo v. Ritchfield*, 790 So.2d 1226, 1228 (Fla. 4th DCA 2001) (using agency theory to maintain jurisdiction where parent and subsidiary "were a confusing conglomerate, and were essentially one and the same company both financially and structurally.")[11]

---

[11] *See also* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002) (For purposes of asserting personal jurisdiction, a corporation is "doing business" in the jurisdiction "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity.)

In this case, Counter Defendants Energy Allied and the Trading Company are entities that are owned, controlled and operated by the Al-Babtains.  U.S. Energy Allied was a subsidiary of Energy Allied manifesting no separate interests of its own, but in effect created by the Al-Babtains only as an agent to achieve the purpose of the parent corporation in the United States and Florida.  Hani Banoub was an authorized agent for Energy Allied, the Trading Company and U.S. Energy Allied, acting in his capacity as Vice President for all three entities in the United States, Florida and Kuwait.

Pursuant to Banoub's affidavits offered in opposition to Counter Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Banoub offers numerous examples of business related activities, communications, meetings and contacts conducted by Banoub acting as an authorized agent in Florida on behalf of Energy Allied and the Trading Company.  These activities have not been specifically challenged through affidavits by the Counter Defendants. Thus, this Court will accept the occurrence of such business related activities as true.

Accordingly, Florida's long-arm statute appears to vest this Court with personal general jurisdiction over both Energy Allied and the Trading Company under Florida Statute § 48.193(2).  "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Section 48.193(2), Florida Statutes (2007).

## II.     Due Process.

For jurisdiction to exist, due process requires that a nonresident defendant have "fair warning" that a particular activity may subject it to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).  The defendant must have "purposefully availed" itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  *Burger King*, 471 U.S. at 476.  In addition, the nonresident's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.*" Cable/Home Communications Corp. v. Network Products, Inc.*, 902 F.2d 829, 854-60 (11th Cir. 1990).  Finally, a forum's exercise of personal jurisdiction over a defendant must also comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

"Minimum contacts" with the forum state serves two important functions: (1) "[i]t protects the defendant against the burdens of litigating in a distant or inconvenient forum," and (2) it "ensures that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen*, 444 U.S. at 291-92.

Counter Defendants have "purposely availed" themselves "of the privilege of conducting activities within the forum State" on numerous occasions.  In 2004, Energy Allied established U.S. Energy Allied.  U.S. Energy Allied was wholly operated and controlled by Energy Allied, and directly managed and controlled by the Al-Babtains.  Banoub was a "Vice President" and acted as U.S. Energy Allied's local agent in Florida and in the United States.

The Al-Babtains were managing members of U.S. Energy Allied and provided a Tampa post office box in the Articles of Incorporation and Annual Reports filed with the Florida Department of State, Division of Corporations.[12]  U.S. Energy Allied maintained a principal address in Miami, Florida, until it was dissolved in 2006.

In Banoub's Employment Agreement with Energy Allied, Banoub agreed to "perform faithfully to the best of his ability, experience and talents, the services described as follows: Business Development, New Ventures, General Management Support and Client Services." Further, the Employment Agreement states, in pertinent part: "Hani Banoub is required to report all business activities and potential new ventures or projects directly to the board."[13] Notably, the Employment Agreement does not indicate where these services were to be performed.  The Employment Agreement does, however, indicate that Banoub's address was located in Lutz, Florida, and that he would be paid in U.S. dollars.

Pursuant to affidavits offered by Banoub, he was retained in order to develop new business in the United States and in Florida on behalf of many Al-Babtain entities, including the Trading Company and Energy Allied.  Banoub claims to have negotiated contracts, conducted meetings, and acted as an agent for the Trading Company and Energy Allied on numerous occasions in Florida.[14]

---

[12] *See* www.sunbiz.org.

[13] Dkt. #82-2.

[14] In his affidavit, Banoub offers specific details of business dealings conducted by him on behalf of both Counter Defendants in Florida.  As a result of such dealings, an agency agreement
(continued...)

As a result of such business development services, the Trading Company and Energy Allied greatly benefitted from profitable contracting and agency agreements with U.S. companies. Banoub's counterclaims are based, in part, on a demand for a percentage of profits realized by the Trading Company and Energy Allied as a result of the business development services provided by Banoub on their behalf in Florida and in the United States.

For these reasons, the Court concludes that Counter Defendants' contacts with Florida meet the constitutional requirements concerning the relatedness of the Defendants' contacts to the claims asserted, purposeful availment, reasonable expectation of being haled into court in Florida, and fair play and substantial justice. Accordingly, Counter Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

It is therefore ORDERED AND ADJUDGED that:

1.  Hani Banoub's Motion for Reconsideration of this Court's June 30, 2008 Endorsed Order denying Banoub's Motion for Leave to Amend Answer, Affirmative Defenses and Counterclaim (Dkt. #94) is **GRANTED**.

2.  This Court's Endorsed Order (Dkt. #90) entered on June 30, 2008, is **VACATED**.

3.  Counter Defendants' Motion to Dismiss Counterclaim for Lack of Personal Jurisdiction and Failure to State a Claim, and Supporting Memorandum of Law (Dkt. #79) is **DENIED** as stated herein.

---

[14](...continued)
was executed on behalf of the Trading Company with WGI. *See* Dkt. #93-2.

4.      Counter Plaintiff's Motion to Amend/Correct Answer, Affirmative Defenses and Counterclaim (Dkt. #82) is **GRANTED**.  Counter Plaintiff is directed to electronically file his Amended Answer, Affirmative Defenses and Counterclaim within five (5) days of the entry of this Order.

5.      Counter Defendants Energy Allied Consultants, Ltd. and U.S. Energy Allied, LLC are **DISMISSED** from these proceedings without prejudice.

**DONE** and **ORDERED** in Tampa, Florida on August 26, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**<u>Copies furnished to:</u>**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1973.mt diss personal juris 79.wpd