# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**BADER AL-BABTAIN and**
**ABDULMOHSEN AL-BABTAIN,**

    **Plaintiffs,**

**v.**                                              **Case No. 8:06-cv-1973-T-30TGW**

**HANI S. BANOUB,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Counter-Defendants' Motion to Dismiss Counterclaim for Failure to State a Claim and Supporting Memorandum of Law (Dkt. #105), and Counter-Plaintiff's Response to Motion to Dismiss Counterclaim for Failure to State a Claim and Supporting Memorandum of Law (Dkt. #110). The Court, having considered the motion, response, counterclaims, exhibits, and being otherwise advised in the premises, concludes that Counter-Defendants' motion should be granted in part and denied in part as stated herein.

**Motion to Dismiss Standard Under 12(b)(6).**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Determining

the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1959.

**Background**.

Plaintiffs/Counter Defendants, Bader Al-Babtain and Abdulmohsen Al-Babtain (together, the "Al-Babtains"), bring a four (4) count Complaint (Dkt. #1) against Defendant Hani S. Banoub ("Banoub"), arising out of the purchase of a recreational yacht. The Complaint brings the following causes of action: Count I - Breach of Oral Contract; Count II - Quantum Meruit; Count III - Conversion; and Count IV - Fraud. On August 28, 2008, Banoub filed an Amended Answer to Plaintiff's Complaint, Affirmative Defenses, and Counterclaim against Counter Defendants, Bader Al-Babtain, Abdulmohsen Al-Babtain, Energy Allied Co. ("Energy Allied"), and M/S Bader Al-Babtain General Trading Co. (the "Trading Company"). The Counterclaim brings the following causes of action: Count I -

Breach of Oral Contract (against Bader Al-Babtain only); Count II - Breach of Oral Contract (against Bader Al-Babtain only); Count III - Breach of Employment Agreement (against Energy Allied only); Count IV - Breach of Oral Contract (against Energy Allied and Trading Company); and Count V - Unjust Enrichment (against all Counter Defendants).

## Discussion.

Counter Defendants Abdulmohsen Al-Babtain and Energy Allied seek to dismiss Count IV (Breach of Oral Contract) and Count V (Unjust Enrichment) of the Amended Counterclaim (Dkt. #101) as it relates to each, for failure to state a claim upon which relief may be granted.

### I.   Banoub's claim for breach of oral contract against Energy Allied.

In the Amended Counterclaim, Banoub alleges that prior to January of 2004, he entered into an oral agreement with Bader Al-Babtain wherein Banoub would receive 10% gross revenues for all business dealings which resulted in financial gain to Bader Al-Babtain or companies in which Bader Al-Babtain possessed a financial interest, including Energy Allied. Banoub claims that he initiated at least one business deal in 2002 that benefitted Energy Allied. Banoub also claims that on January 2, 2004, he entered into a written Employment Agreement with Energy Allied (the "Employment Agreement"). The Employment Agreement states, in pertinent part:

> 1. **Employment.** Energy Allied Company shall employ Hani Banoub as a Vice President. Hani Banoub accepts and agrees to such employment, subject to general supervision, advice and direction of Energy Allied Co. Board of Directors. Hani Banoub agrees to perform faithfully to the best of his ability, experience and talents, the services described as follows: Business

>Development, New Ventures, General Management Support and Client Services. Hani Banoub is required to report all business activities and potential new ventures or projects directly to the board.
>
>2. **Base Salary.** As compensation for the services provided by Hani Banoub under this Agreement, Energy Allied Company will pay an annual salary of $72,000 payable monthly on the twentieth of each month. This salary shall increase 5% annually starting June 2004.
>
>3. **Bonus.** Energy Allied Company will pay a quarterly bonus to Hani Banoub equals [sic] to 5% of Total Gross Revenues (income) of Energy Allied Company.
>
> * * *
>
>5. **Entire Agreement.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions considered. Amendments to this Agreement must be made in writing and signed by both parties.[1]

Counter Defendant Energy Allied argues that Banoub's claim in Count IV for breach of oral contract as it pertains to Energy Allied is barred by the express terms of the Employment Agreement. Specifically, Energy Allied argues that Banoub's oral breach of contract claim is barred by the contractual provision found in Paragraph 5 which provides, "[T]his Agreement contains the entire agreement of the parties and there are no other promises or conditions considered." Energy Allied argues that since the parties' oral contract preceded the creation of the Employment Agreement, then all agreements arising from prior negotiations between the parties are deemed to have been merged into the written contract.

In response, Banoub argues that there are two separate agreements between the parties, first the oral agreement, then the written Employment Agreement. Banoub also argues that under the Employment Agreement he provided additional management services

---

[1] Counterclaim, Exhibit #6, Employment Agreement, Dkt. #101-7.

above and beyond the business development services already being provided to Energy Allied pursuant to the parties' oral agreement.

The correct legal analysis falls somewhere in between these arguments. Plaintiff asserts two distinct agreements between the parties: (1) the oral agreement that was entered into prior to January of 2004, and (2) the Employment Agreement that was entered into on January 2, 2004. The Court also agrees that the "Entire Agreement" provision in paragraph 5 of the Employment Agreement provides that the Employment Agreement "contains the entire agreement of the parties and there are no other promises or conditions considered." Such provision terminates obligations under the oral agreement that may have existed.[2] Such provision does not, however, merge all previous obligations under the oral agreement into the Employment Agreement (e.g. compensation for services performed by Banoub under the oral contract on behalf of Energy Allied prior to January 2, 2004, would not "merge" into compensation owed to Banoub under the Employment Agreement).

Accordingly, Counter Plaintiff's claim for breach of an oral contract (Count IV) against Energy Allied is barred by the Employment Agreement to the extent such claim seeks damages for services provided by Banoub on or after January 2, 2004. Claims for compensation based on consulting and development services provided by Banoub to Energy

---

[2] Notably, under the Employment Agreement Banoub agreed "to perform faithfully to the best of his ability, experience and talents, the services described as follows: Business Development, New Ventures, General Management Support and Client Services." Accordingly, the Court disregards Banoub's argument that his compensation under the Employment Agreement was meant to be received in addition to his compensation under a previous oral agreement, where the Employment Agreement specifically provides that Banoub's development services would be combined with general management services.

Allied prior to the origination of the Employment Agreement are not barred by the Employment Agreement since the Employment Agreement does not contain a merger clause.

## II.  Banoub's claim for unjust enrichment against Energy Allied.

Counter Defendant Energy Allied argues that Banoub's unjust enrichment claim contained in Count V of the Amended Counterclaim fails in the face of the express written Employment Agreement executed by and between Banoub and Energy Allied. In Paragraph 23 of the Amended Counterclaim, Banoub alleges: "On January 2, 2004, Banoub entered an employment agreement with Energy Allied Kuwait." Paragraph 23 is incorporated by reference in each count of the Amended Counterclaim. Banoub attached a copy of the Employment Agreement as Exhibit 6 to the Amended Counterclaim in support of his breach of Employment Agreement claim against Energy Allied. Thus, the validity of the Employment Agreement is not in dispute.

In Count V of the Amended Counterclaim, Banoub brings an unjust enrichment claim against all of the Counter Defendants. Banoub claims that he provided business development services for the benefit of Energy Allied, Energy Allied accepted the benefits of Banoub's business development services with knowledge that Banoub was providing such services, and it would be inequitable for Energy Allied to retain payments received by WGI without paying Banoub 10% of the gross revenues relating to such payments.

Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter. *Diamond "S"*

*Development Corporation v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008); *Kovtan v. Frederiksen*, 449 So.2d 1 (Fla. 2d DCA 1984).

Accordingly, the Court concludes that Banoub's unjust enrichment claim against Energy Allied must be limited to consulting and development services provided by Banoub on behalf of Energy Allied prior to the origination of the Employment Agreement. To the extent Count V seeks damages for services provided by Banoub to Energy Allied on or after January 2, 2004, such claim is dismissed.

### III.   Banoub's claim for unjust enrichment against Abdulmohsen Al-Babtain.

Counter Defendant Abdulmohsen Al-Babtain argues that Banoub's unjust enrichment claim as it pertains to him individually fails to satisfy pleading requirements or allege facts to support the general allegation that Abdulmohsen Al-Babtain has been unjustly enriched. Specifically, Abdulmohsen Al-Babtain argues that Banoub fails to set forth any fact to support the allegation that there was a reasonable expectation that he would be compensated by Abdulmohsen Al-Babtain. Banoub only alleges that Bader Al-Babtain promised to pay him for procuring business opportunities. Further, Abdulmohsen Al-Babtain argues that the Amended Counterclaim is devoid of any factual allegation that Abdulmohsen Al-Babtain either requested or accepted a benefit from Banoub.

In response, Banoub argues that Abdulmohsen Al-Babtain benefitted from Banoub's business development services because Abdulmohsen Al-Babtain purchased a company named Destinations of the World. Banoub claims that Destinations of the World was initially going to be purchased by Energy Allied Consultants (not a party in this case) in which

Banoub had a 10% ownership interest. Banoub alleges that in "October of 2005, Abdulmohsen Al-Babtain was paid funds by WGI through the use of Ahmadiah as a subcontractor for WGI, a business opportunity developed by Banoub."

Under Florida law, to prove a claim for unjust enrichment, a plaintiff must establish facts that demonstrate: (1) that a benefit was conferred upon and flowed to the defendant; (2) that the defendant either requested the benefit or knowingly and voluntarily accepted it; and, (3) that under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr. Inc.*, 728 So. 2d 297, 303 (Fla. 1st DCA 1999).

The Court agrees that Banoub fails to include enough facts to state a claim to relief. Rule 12(b)(6) requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Even if all inferences derived from the allegations of the Amended Counterclaim are evaluated in the light most favorable to Banoub, it appears that all oral promises of compensation to Banoub for business development services flowed through Bader Al-Babtain. The allegations of the Amended Counterclaim do not mention promises or acknowledgments on the part of Abdulmohsen Al-Babtain. Further, the allegations fail to allege that a direct benefit was conferred upon Abdulmohsen individually. Accordingly, Count V of the Amended Counterclaim is dismissed as to Counter Defendant Abdulmohsen Al-Babtain only.

It is therefore ORDERED AND ADJUDGED that:

1. Counter-Defendants' Motion to Dismiss Counterclaim for Failure to State a Claim and Supporting Memorandum of Law (Dkt. #105) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

2. Counter Defendant Abdulmohsen Al-Babtain is **DISMISSED** as a Counter Defendant within these proceedings.

3. Counter Plaintiff Banoub may amend the Counterclaim within twenty (20) days of the entry of this Order.

**DONE** and **ORDERED** in Tampa, Florida on November 18, 2008.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1973.mtd 105.wpd